**STATE of Maine**

v.

**Randall GAMMON.**

Supreme Judicial Court of Maine.

Argued June 10, 1987.
Decided Aug. 21, 1987.

---

Janet T. Mills, Dist. Atty., Patricia Reynolds (orally), Asst. Dist. Atty., South Paris, for plaintiff.

Paul R. Dumas, Jr., John C. McCurry (orally), Cloutier, Joyce, Dumas & David, Rumford, for defendant.

Before McKUSICK, C.J., NICHOLS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ., and WERNICK, A.R.J.

NICHOLS, Justice.

The Defendant, Randall Gammon, appeals from a judgment of the Superior Court (Oxford County), affirming his conviction on three counts of manslaughter, 17–A M.R.S.A. § 203(1)(A) (1983), on April 25, 1986, in the District Court, Rumford. The Defendant's major contention on appeal is that the District Court erred in finding the *mens rea* essential to a manslaughter conviction. The Defendant also claims that the District Court committed reversible error in receiving the testimony of one of the State's witnesses as an expert in automobile accident reconstruction, and in admitting into evidence testimony relating to the Defendant's driving speed prior to the collision.

We affirm the judgment.

The Defendant's manslaughter conviction arises out of an automobile collision that occurred on Route 108 in Peru on June 5, 1984. Then 17 years old, the Defendant was driving home from school with a brother and some friends when he drove into the rear end of a vehicle stopped in his lane, heading in the same direction but waiting to make a left turn. The vehicle he struck caught fire, killing the three occupants of the rear seat of the stopped vehicle.

■ We focus first upon the *mens rea* element of manslaughter. 17–A M.R.S.A. § 203(1)(A), "Manslaughter," states that a person is guilty of manslaughter if he recklessly, or with criminal negligence causes the death of another human being. 17–A M.R.S.A. § 35 (1983)[1] defines both "reck-

1. 17–A M.R.S.A. § 35 "Definitions of culpable states of mind" provides in relevant part:
3. "Recklessly."
A. A person acts recklessly with respect to a result of his conduct when he consciously disregards a risk that his conduct will cause such a result.
B. A person acts recklessly with respect to attendant circumstances when he consciously disregards a risk that such circumstances exist.
C. For purposes of this subsection, the disregard of the risk, when viewed in light of the nature and purpose of the person's conduct and the circumstances known to him, must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation.

lessly" and "criminal negligence." Reading these definitions into section 203(1)(A), this Court has required that the State prove beyond a reasonable doubt that (1) the defendant acted recklessly, by consciously disregarding a risk, or acted with criminal negligence by failing to be aware of a risk that his conduct could cause the death of another; (2) this disregard or failure to be aware of a risk rises to a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation; and (3) the defendant's reckless or criminally negligent conduct caused a death. *State v. Longley,* 483 A.2d 725, 732 (Me.1984); *State v. Michael Z.,* 427 A.2d 476, 478 (Me.1981).

■ The District Court expressly found that after passing through a series of curves four-tenths of a mile from the collision point, this Defendant entered a straight section of the road where he saw the victims' automobile stopped in his lane. Upon entering the straight section of road and up to about 500 feet from the collision point, the Defendant was travelling at approximately 80 to 85 miles per hour. However, after being warned by the other occupants of his automobile, the Defendant had slowed to an approximate speed of 60 miles per hour, which was in excess of the posted speed limit of 55 miles per hour. Significantly, the Defendant testified that his sight and attention had been drawn away from the highway, as he looked for his father who was working in the field, for the entire interval from his first sight of the automobile, until the second time he saw it, which was just before he began to lock his brakes.

While some of the evidence presented at trial was conflicting, the findings made by the District Court on the facts essential for the conviction are amply supported by the evidence. We cannot say that the District Court erred in finding that the combination of (1) the Defendant's decision to travel at a speed of approximately 60 miles per hour when he knew that there was another automobile in the lane ahead of him, (2) his opportunity to observe for four-tenths of a mile the other vehicle stopped directly ahead in his lane, and (3) gazing into the adjacent field as he travelled an appreciable length of the straightaway, particularly after he knew of the presence of the other vehicle in his lane, involved reckless conduct, a conscious disregard of a known risk, and a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation.

■ The Defendant next contends that the District Court committed reversible error in finding a state trooper qualified to testify as an expert in automobile accident reconstruction. Specifically, the Defendant argues that this trooper lacked the scientific training and experience necessary to offer his opinions as an expert. We cannot say that the District Court abused its discretion in admitting the testimony. The trooper was at least minimally qualified to offer opinions as an expert, and any shortcomings in the trooper's background went to the weight to be given his testimony, not to its admissibility. *State v. Longley,* 483 A.2d at 731.

■ The Defendant's final argument that merits our attention is his claim that the District Court committed reversible error when it admitted testimony relating to the speed at which the Defendant was travelling one and four-tenths miles before the collision. We review that court's decision to admit this evidence only for an abuse of discretion. *State v. Gagnon,* 383 A.2d 25, 31 (Me.1978). Whether this evi-

---

4. "Criminal negligence."
A. A person acts with criminal negligence with respect to a result of his conduct when he fails to be aware of a risk that his conduct will cause such a result.
B. A person acts with criminal negligence with respect to attendant circumstances when he fails to be aware of a risk that such circumstances exist.

C. For purposes of this subsection, the failure to be aware of the risk, when viewed in light of the nature and purpose of the person's conduct and the circumstances known to him, must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation.

dence has sufficiently reliable probative value necessary for admission depends upon the specific facts, circumstances and contingencies of change in each case. *See* 2 J. Wigmore, *Wigmore on Evidence,* § 382, at 322 (3d ed. 1940), *quoted in, Emery v. Frateschi,* 161 Me. 281, 287, 211 A.2d 578, 582 (1965).

Here the "contingencies of change" were significant as the prior speed was reached nearly a mile and a half before the point of collision, the speed was attained while the Defendant was passing another vehicle, and before he passed through several curves in the road. However, the speed that was relied upon by the District Court in finding the *mens rea* element of manslaughter was not the prior speed, but the speed maintained by the Defendant as he travelled down the straightaway and, spe-cifically, when he first began to apply his brakes in anticipation of the collision. There was no unfair prejudice to the Defendant by admission of this testimony. It is highly probable that the error, if any, had no effect upon the District Court's ultimate finding. *State v. True,* 438 A.2d 460, 467 (Me.1981).

The entry is:

Judgment affirmed.

All concurring.